IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RYAN KEITH WHITT,   Plaintiff, | :: :: :: | CIVIL ACTION NO. 1:10-CV-01689-AT |
| v. | :: :: | |
| THOMAS JEFF WIGINGTON, Sheriff, Rockdale County,   Defendant. | :: :: :: | PRISONER CIVIL RIGHTS 42 U.S.C. § 1983 |

## ORDER AND OPINION

Plaintiff, Ryan Keith Whitt, formerly incarcerated at the Rockdale County Detention Center (RCDC), has submitted this *pro se* civil rights action, seeking relief under 42 U.S.C. § 1983. Plaintiff has been granted *in forma pauperis* status and has paid the initial partial filing fee. The matter is now before the Court for an initial screening.

### I.    The Legal Framework

####    A.    28 U.S.C. § 1915A Review

Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks

monetary relief from a defendant who is immune from such relief.  A complaint is frivolous when it "has little or no chance of success" – for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process."  Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).  A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  See also Ashcroft v. Iqbal, _ U.S. _, 129 S. Ct. 1937, 1951-53 (2009) (holding that Twombly "expounded the pleading standard for all civil actions," to wit, conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible") (internal quotations omitted); Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187-88 (11th Cir.

2002) (stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal").

### B.    42 U.S.C. § 1983 Cause of Action

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant's act or omission under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).  If a plaintiff fails to satisfy these requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal.  See Chappell v. Rich, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because plaintiffs' factual allegations were insufficient to support the alleged constitutional violation).

## II.   The Complaint

Whitt sets forth the following allegations against Thomas Wigington, the Sheriff of Rockdale County.  In December 2009, Whitt had two heart attacks and "died twice" in the operating room at Grady Hospital.  More than half of his digestive system was removed, he was in a coma for more than a month, and he lost much blood.  Whitt arrived at the RCDC on or about April 7, 2010, approximately seven weeks before he

executed his complaint on May 26, 2010. Since arriving at the RCDC, he has been "passing blood" and has experienced elevated blood pressure (although it later returned "to somewhat normal"), chest pains, and, generally, "the worst pain of [his] life with [his] insides and also [his broken] leg," for which he never received physical therapy, and with the "major concussion" he experienced when he fell and hit his head after his last heart attack. The Grady doctors placed him on a supplemental nutrition diet, which RCDC officials have ignored, causing him to lose twenty pounds in seven weeks. He also has been deprived "cold turkey" of phenobarbital, his medication for congestive heart failure. Lastly, he alleges that he is "taking about [ten] times as much blood pressure medication" as when he first arrived at the RCDC. (Compl. ¶ IV.)

By way of relief, Whitt wants to be allowed to see the doctors at Grady Hospital, whom he trusts with his life; compensatory damages; an improved diet to build up his body that has been depleted of vitamins and minerals and is low in "red blood count, hemoglobin"; "something for chronic pain, preferably not Ibuprofen"; and a transfer to Gwinnett County, where he is on probation and hopes for better medical treatment. (Compl. ¶ V.) Whitt has now been transferred to the Robert A. Deyton Detention Facility in Lovejoy, Georgia, a federal pre-trial facility (see Docket Entry, Sept. 15, 2010), mooting all of his claims for prospective injunctive relief and leaving only his

claim for damages.  See McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) (stating that "[t]he general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief").

## III.  The Law Controlling Whitt's Claims Against Sheriff Wigington

### A.  Deliberate Indifference Under the Eighth Amendment

The Eighth Amendment prohibits indifference to a serious medical need so deliberate that it "constitutes the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations omitted).  The Supreme Court has recognized "the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs . . . . [D]enial of medical care may result in [unnecessary] pain and suffering . . . . [that] is inconsistent" with the view that it is "just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." Id. at 103-04 (citations and internal quotations omitted).

To demonstrate deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). See also Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187

AO 72A
(Rev.8/82)

(11th Cir. 1994) (noting that "a 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002). A plaintiff may establish deliberate indifference by showing that a prison official failed or refused to provide care for his serious medical condition, delayed care "even for a period of hours," chose "an easier but less efficacious course of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

### B.   Sheriff Wigington: Official-Capacity Liability

Whitt has sued only the Sheriff of Rockdale County. When functioning as an arm of the state, a Georgia Sheriff enjoys Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against him in his official capacity. See Purcell v. Toombs County, 400 F.3d 1313, 1325 (11th Cir. 2005) (concluding that a Georgia Sheriff "functions as an arm of the State [not the County] when promulgating policies and procedures governing conditions of confinement" at a county jail, and, therefore, the Sheriff was "entitled to Eleventh Amendment immunity from [a] suit [for money damages] in his official capacity").

6

Nevertheless, with respect to Whitt's claim of deliberate indifference to his serious medical needs, "the Court is not persuaded that [Wigington] is entitled to Eleventh Amendment immunity." See Sanders v. Langley, No. 1:03-CV-1631-WSD, 2006 U.S. Dist. LEXIS 21180, at *29 (N.D. Ga. Mar. 29, 2006) (noting that in Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc), the Eleventh Circuit "took great pains to limit its holding to the particular functions at issue in that case, and to distinguish those functions from the provision of medical care," stating in Manders: "We stress that this case does not involve medical care, which counties have a statutory obligation to provide to inmates in county jails," id. at 1323 n.43 (citing O.C.G.A. § 42-5-2); and concluding, therefore, that district court "cannot simply assume that because a county sheriff acts as an arm of the State with respect to conditions of confinement at the jail, he necessarily acts as an arm of the State with respect to the provision of medical care at the jail as well"). See also Purcell, 400 F.3d at 1325 (acknowledging that Eleventh Circuit, sitting en banc in Manders, "declined to determine that a Georgia sheriff wears a 'state hat' for all functions").

Accordingly, Wigington may be liable to Whitt in his official capacity for money damages if, as Sheriff, he implemented or enforced "a custom or policy [at the RCDC] that constituted deliberate indifference to [a] constitutional right," which

7

custom or policy "caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). See also Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003) (noting that § 1983 plaintiff may establish unconstitutional policy by identifying "either (1) an officially promulgated . . . policy or (2) an unofficial custom or practice . . . shown through the repeated acts of a final policymaker"). However, Whitt has not alleged that his inadequate medical treatment is the result of an unconstitutional policy or custom at the RCDC. Therefore, Whitt has not established that he is entitled to damages from Sheriff Wigington in the Sheriff's official capacity.

Moreover, although "the Eleventh Amendment does not prohibit a plaintiff from suing state officials in their official capacities for prospective injunctive relief," Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989), Whitt's transfer moots all of his claims for such relief, see McKinnon, 745 F.2d at 1363.

### C. Sheriff Wigington: Individual-Capacity Liability

The Eleventh Amendment does not protect a state official from claims brought against him in his individual capacity. See Hafer v. Melo, 502 U.S. 21, 30-31 (1991) (holding that "the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983" and that "state officers [are not] absolutely immune from personal liability under § 1983 solely by virtue of

8

the 'official' nature of their acts") (internal quotations omitted).  However, noting the well-established rule "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability," the Eleventh Circuit has stated that, instead, a supervisor is individually liable only when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  This causal connection can be established by showing that (1) the supervisor knew about and failed to correct a widespread history of abuse, or (2) he had a custom or policy that resulted in a constitutional violation, or (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Id. (Internal quotations omitted).  See Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985) (stating that the "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action"). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Cottone, 326 F.3d at 1360.  Whitt has

9

failed to meet this rigorous standard because he has not alleged that Sheriff Wigington had any involvement, direct or supervisory, in Whitt's allegedly unconstitutional medical treatment. Accordingly, Whitt also has not made out a claim against Sheriff Wigington in the Sheriff's individual capacity.

## IV. Conclusion

Whitt alleges that he suffers from several conditions – excessively high blood pressure, congestive heart failure, a depleted red blood cell count, insufficient nutritional intake, and chronic pain – that appear to qualify as serious medical needs. He also alleges that he has not received his prescribed treatment, or adequate substitute treatment, for these conditions. However, Whitt has not alleged that his failure to receive adequate medical treatment derives from a policy or custom for which Sheriff Wigington, the sole named Defendant, is responsible in his official capacity; nor has he alleged that there is a causal connection between Sheriff Wigington's supervisory conduct and Whitt's treatment, entitling Whitt to relief against Sheriff Wigington in the Sheriff's individual capacity.

Accordingly, because it appears that Whitt has failed to name a defendant who may potentially bear liability in conjunction with Whitt's deliberate indifference

10

claims, this action will be **DISMISSED**, subject to the provisions below,[1] unless Plaintiff Whitt satisfies the following conditions: Plaintiff **MAY AMEND** his complaint within thirty (30) days of the entry date of this Order, to name a defendant who may be sued for his alleged wrongs. See Schuurman v. Motor Vessel Betty K V, 798 F.2d 442, 445 (11th Cir. 1986) (stating that, "[i]n dismissing [a] complaint, the district court may . . . provide for a stated period within which the plaintiff may amend the complaint," and if plaintiff does not do so, "the dismissal order becomes final at the end of the stated period"). If Whitt does not amend his complaint during the thirty-day time period noted above, the Clerk **SHALL ENTER** a final judgment in this action.

**IT IS SO ORDERED** this 26th day of April 2011.

_____
AMY TOTENBERG
UNITED STATES DISTRICT JUDGE

---

[1] The Court makes the allowance for Plaintiff's amendment here in deference to his *pro se* status

11